UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
_____
                               )
DR. THOMAS M. EDSALL, and      )
GRISEL EDSALL                  )
     Plaintiffs                )     Civil Action
                               )     No. 04-40106-FDS
v.                             )
                               )
ASSUMPTION COLLEGE,            )
DR. THOMAS R. PLOUGH,          )
DR. JOSEPH F. GOWER, and       )
DR. JOHN F. McCLYMER           )
     Defendants                )
_____)
```

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I AND III THROUGH IX OF PLAINTIFFS' COMPLAINT AND, IN THE ALTERNATIVE, CROSS-MOTION FOR LEAVE TO AMEND COMPLAINT
<u>TO ALLEGE MALICE AS TO COUNT VIII</u>**

Plaintiffs Dr. Thomas M. Edsall and Grisel Edsall (hereinafter, the "Edsalls") hereby submit the within memorandum of law in support of their opposition to Defendants' Motion to Dismiss Count I and Counts III through IX of Plaintiffs' Complaint and, in the alternative, their Cross-Motion for Leave to Amend Their Complaint to Allege Malice as to Count VIII, where the Edsalls have stated claims upon which relief may be granted on all counts (with the exception of Count III and Count IV, in part).

## FACTS

In the Fall of 2000, Dr. Edsall began teaching at Assumption College (hereinafter, "AC") as a part-time professor in the History Department. (Complaint, ¶8) He later became a full-time visiting Assistant Professor of Latin American History for the academic year 2002-03. (Complaint, ¶20) During his three years at AC, Dr. Edsall's classes were very well attended by students, and he received exceptional student evaluations. (Complaint, ¶10).

In or around October, 2002, Defendant AC published an announcement for a faculty vacancy for a tenure-track position teaching Latin American History in the History Department at Defendant AC. (Complaint, ¶11). On information and belief, Defendant McClymer served as the Chair of the Latin American Search Committee ("Search Committee") assigned to interview candidates and to fill the vacancy. *Id.*

Dr. Edsall timely applied for the tenure-track position at AC. (Complaint, ¶12). At all times relevant, Dr. Edsall was a qualified person capable of performing the essential functions of the tenure-track position. Dr. Edsall desired the tenure-track position and would have accepted that position had it been offered to him. (Complaint, ¶14)

In or around late November 2002, Defendant McClymer informed Dr. Edsall that he (Dr. Edsall) should seek employment

elsewhere because defendants Plough and Gower were intent on hiring a minority candidate in an effort to increase diversity at AC. Nonetheless, Dr. Edsall incorrectly believed he would be afforded a fair opportunity to earn the tenure-track position, especially given his qualifications for the position. *Id.*

Some time after Plaintiff Edsall submitted his application for the tenure-track position but on or before February, 2003, Dr. Edsall learned that he was one of three final candidates: Dr. Edsall, a white, U.S. born male; Rosa Carrasquillo, an Hispanic woman; and another female of German descent. (Complaint, ¶13)

On or about February 2003, the History Department formally recommended Dr. Edsall for the tenure-track position in Latin American history at an annual salary with full benefits. Nevertheless, Defendants Gower and Plough rejected the Search Committee's recommendation, and instead selected Rosa Carrasquillo. Dr. Edsall was later offered a part-time position for the Fall semester of 2003 at a salary of approximately $6,000 (Six Thousand Dollars) for the semester, with no benefits. Dr. Edsall declined the offer and relocated to New York City, where he continued his search for an academic position. (Complaint, ¶15)

On information and belief, the true motivation for the decision by Defendants AC, Plough and Gower to reject the

History Department's recommendation and not to offer the tenure-track position to Dr. Edsall was that Dr. Edsall is a white male.(Complaint, ¶16)

Defendant AC is an employer for the purposes of 42 U.S.C. §2000e-2. (Complaint, ¶19) On October 14, 2003, Dr. Edsall timely filed a claim with the Equal Employment Opportunity Commission based upon the allegations stated herein. (Complaint, ¶23) The United States Department of Justice then issued a letter to Dr. Edsall giving him the right to bring a private suit based upon these allegations on March 25, 2004. (Complaint, ¶24)

The within action followed.

## ARGUMENT

**A.   The Standard of Review**

When examining a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), this Court must accept all of the allegations of the Complaint as true and must draw all reasonable inferences in favor of the plaintiffs -  here, the Edsalls. *Albright v. Morton*, 2004 WL 1240900, at *2 (D.Mass. 2004) citing *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 255 (1st Cir.1994).  The Court may only dismiss a Complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Albright*, 2004 WL 1240900 at *2, quoting

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984).

> **B. This Court Should Deny Defendants' Motion to Dismiss Where the Edsalls have Stated Claims Upon Which Relief May Be Granted.**
>
>> **1. As to Count I, the Edsalls Have Properly Stated Claims Under Title VII Against Assumption College and Defendants Plough, Gower and McClymer.**

In Count I, the Edsalls assert claims against the individual defendants and AC for the Defendants' wrongful failure to hire Dr. Edsall on the basis of his race and/or gender. (Complaint, ¶21). Defendants limit their motion to dismiss on this Count to a contention that Title VII does not apply to individual defendants. (Defendants' memorandum, at p. 2).

Pursuant to 42 U.S.C. 2000e, an employer is prohibited from, in essence, engaging in discriminatory conduct against an individual. See 42 U.S.C. §2000e-2(a)(1). The term employer is broadly defined as "a person engaged in an industry affecting commerce who has fifteen or more employees … *and any agent of such a person*." 42 U.S.C. §2000e(b)(emphasis added). Jurisdictions are split as to whether Congress intended to impose liability upon supervisory employees. *Healy v. Henderson*, 275 F.Supp.2d 40, 43 (D.Mass. 2003)(Tauro, J.), citing *Chatman v. Gentle Dental Ctr. Of Waltham*, 973 F.Supp.

228, 237 (D.Mass. 1997)(Lindsay, J.).   The First Circuit has yet to resolve the issue.  *Healy*, 275 F.Supp.2d at 43.

In *Healy*, Judge Tauro, applying plain meaning rule, found that Congress did not intend to impose individual liability on supervisory employees.  *Id.* at 44-45.  The Court followed *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549 (1987), which requires courts to look to the provisions of the whole law, not a single sentence in assessing the meaning of a statute.  *Healy*, 275 F.Supp.2d at 44.  In *Chatman*, the Court had found that the definition of "employer" was unclear when one looks at the statute as a whole.  *Id.;*  *Chatman*, 973 F.Supp.2d at 238.  Among other things, Judge Tauro pointed to the fact that an agent of an employer would not have the ability to provide the remedies set forth in Title VII, such as reinstatement and back pay.  *Healy*, 275 F.Supp.2d at 44.  In finding that individuals could not be liable under Title VII and that the definition simply refers to the fact that employers are liable for the acts of their employees through respondeat superior, Judge Tauro joined all of the other circuit courts and a majority of the judges of the First Circuit District Courts.  *Id.*  at 45.

Even so, in *Ruffino v. State Street Bank and Trust Co.*, 908 F.Supp. 1019,1047-1048 (D.Mass. 1995), a case which remains good law, Judge Gertner was unwilling to dismiss the "and any agent"

language in the definition of employer as mere "verbal surplusage."  The *Ruffino* Court noted that courts must "attempt to give meaning to each word and phrase" in a statute.  *Id.* at 1048, quoting *United States v. Flores*, 968 F.2d 1366, 1371 (1st Cir. 1992).  A finding that the term "and its agents" is meaningless

> is disfavored as a matter of statutory construction and meritless as a matter of stated policy.  Most simply, it denies the plain meaning of Section 2000e(b):  that both employers, as entities, and their agents, as individuals, are bound by Title VII's dictates.

*Ruffino*, 908 F.Supp. at 1047-1048.  The Court noted that when a statute speaks clearly to a particular issue, the judicial inquiry must generally end.  *Id.* at 1048, quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 474-476, 112 S.Ct. 2589, 2594 (1992).

The judicial inquiry as to the interpretation of the definition of "employer" ends once one has completed reading the definition set forth in the statute.  Applying the plain meaning rule, and in an effort to give each word in the statute meaning to the extent possible, one must conclude that individuals, such as Defendants Plough (the President), Gower (the Provost) and McClymer (the head of the search committee), may be liable under Title VII to their employees, such as Edsall.  Thus, the Edsalls

7

respectfully request that this Court deny Defendants' motion to dismiss part of Count I.

> **2. The Edsalls Have Properly Stated a Claim for Breach of the Covenant of Good Faith and Fair Dealing (1) Where Such a Common Law Claim is not Pre-Empted by M.G.L. c. 151B, and (2) Where This Court Should Reserve on This Portion of Defendants' Motion Until the Summary Judgment Stage of This Case Where Defendants' Motion to Dismiss that Count is Premature.**

In Count V, the Edsalls claim that the Defendants wrongfully breached the covenant of good faith and fair dealing by, among other things, refusing to hire Dr. Edsall to the tenure track position on account of his race and/or gender. (Complaint, ¶42). Defendants argue that such a claim may go forward "only when there is no other adequate way to vindicate the public policy." *Id.*

First, the M.G.L. c. 151B claim asserted by the Edsalls in Count IV[1] does not bar the Edsalls' common law claims, including, without limitation, claims for breach of the covenant of good faith and fair dealing, where such claims pre-existed the enactment of M.L.G. c. 151B in 1946. See *Horney v. Westfield Gage Co.*, 95 F.Supp.2d 29 (D. Mass. 2000); and *Chapin v. Univ. of Mass. at Lowell*, 977 F.Supp. 72 (D.Mass. 1997); but see e.g. *Dorn v. Astra USA*, 975 F.Supp. 388 (F.Supp. 1997)(151B claims recast as common law torts may be barred).

---

[1] The Defendants do not move to dismiss the 151B claim.

Second, the Defendants' motion to dismiss is premature. As the case progresses, Defendants may attempt to have the Edsalls' 151B claim dismissed for some reason which is unknown to the Edsalls, and which may be unknown to Defendants as well. To the extent that this Court finds that the breach of covenant of good faith and fair dealing claim is pre-empted by 151B or that said claim must be dismissed because there are other ways to vindicate the public policy[2] (under *Bhawan v. Fallon Clinic, Inc.*, 5 F.Supp.2d 64, 67 (D.Mass. 1998), the Court may be preventing the Edsalls from seeking to assert such claims later in the case in the event that the 151B claim is somehow dismissed. Therefore, the Edsalls respectfully request that this Court either deny the motion to dismiss as to Count V outright, or, instead to reserve on this portion of the motion to dismiss until such time as the Court considers a motion for summary judgment, if filed, later in the case.

> **3. The Edsalls' Claims for Intentonal/Negligent Infliction of Emotional Distress Are Not Barred By the Exclusivity Provisions of the Workers' compensation Act Where the Damages Suffered By Dr. Edsall, Who Was Seeking to Obtain Employment, Did Not Arise Out of the Course of His Employment.**

---

[2] Obviously, in this case, there is a public policy in favor of preventing discrimination against an individual on the basis of his race and/or gender.

In Count VI, the Edsalls assert a claim for negligent/intentional infliction of emotional distress. In essence, the Edsalls claim that the Defendants engaged in a pattern of extreme or outrageous conduct in failing to hire Dr. Edsall. (Complaint, ¶45). The Defendants argue that such claims are barred by the exclusivity bar of the workers' compensation statute. (Defendants' Memorandum, at p. 5).

> The workers' compensation exclusivity bar operates only where the plaintiff is shown to be an employee; his condition is shown to be a 'personal injury' within the meaning of the [workers'] compensation act; and the injury is shown to have arisen *out of and in the course of …. employment.*

*Green v. Wyman-Gordan Company*, 422 Mass. 551, 664 N.E.2d 808 (1996)(emphasis added). That Act does not bar individual employees from liability for intentional torts. See *Ruffino*, 908 F.Supp. 1019, 1049 (D.Mass. 1995)(intentional infliction of emotional distress claim not barred by Workers' compensation Act), *Foley v. Polaroid Corp.*, 400 Mass. 82, 508 N.E.2d 72 (1987)(Workers' Compensation Acct does not bar emotional distress claims for false imprisonment). Tort claims "will lie where the employee 'commits an intentional tort which was in no way within the scope of employment furthering the interests of the employer.'" *Ruffino*, 908 F.Supp. at 1049-1050 quoting *O'Connell v. Chasdi*, 400 Mass. 686, 690, 511 N.E.2d 349 (1987).

As a result, a plaintiff may bring a claim seeking emotional distress damages against the defendants. *Id.*

In this case, Edsall was seeking to obtain another position within Assumption College. He, for purposes of his application, is identical to any other applicant applying for a position with Assumption College. The process of seeking another position is not something that would fall within the scope of his employment with Assumption, and, therefore, would not fall within the scope of the Workers' Compensation statute. Moreover, the Complaint alleges that the individual defendants engaged in conduct to discriminate against Dr. Edsall on the basis of his race and gender during the selection process. In essence, the Complaint alleges that the Defendants deliberately selected a minority, female candidate over Dr. Edsall, despite his qualifications. In doing so, the Defendants also acted outside the scope of their employment, and against the interests of their employer. As a result, the Workers' Compensation Act does not bar the Edsall's claims for intentional and/or negligent infliction of emotional distress against any of the Defendants. See *Columbus v. Biggio*, 76 F.Supp.2d 43, 57 (D.Mass. 1999)(co-employee's tortious conduct not barred by Workers' Compensation statute where conduct not within scope of employment or to further employer's interest, but rather motivated by private vendetta),

quoting *Brown v. Nutter, McClellan and Fish*, 45 Mass.App.Ct. 212, 216, 696 N.E.2d 953 (1998).

Defendants also argue that the conduct here does not rise to the level of an intentional infliction of emotional distress claim. At this early juncture of the case, one must take the allegations of the Complaint as true. It is too early to make an assessment as to the severity of the emotional distress claims. Moreover, the delineation of the severity need not be included in a civil complaint and is an appropriate subject for discovery.

As a result, this Court should deny the motion to dismiss Count VI.

### 4. This Court Should Reserve Ruling on Defendants' Motion to Dismiss as to Count VII (M.G.L. c. 93 §102) Until the Time of Summary Judgment Where Defendants' Motion to Dismiss that Count is Premature.

In Count VII, the Edsalls assert a claim pursuant to M.G.L. c. 93 §102. In that count, the Edsalls allege that, in refusing to hire Dr. Edsall on the basis of his race and/or gender, the Defendants violated his equal rights as protected by M.G.L. c. 93 §102. Defendants claim that 151B provides an exclusive remedy for claims under M.G.L. c. 93 §102. (Defendants' Memorandum, at p. 5). For clarification, Defendants have not moved to dismiss the Edsall's 151B claims (Count IV).

The Defendants' motion to dismiss this Count, however, is premature. As noted above, Defendants may attempt at some point to seek a dismissal of the Edsalls' 151B claim for some presently unknown reason. To the extent that this Court dismisses the M.G.L. c. 93 §102 claim based upon pre-emption by 151B, the Court may be preventing the Edsalls from seeking to assert such claims later in the case in the event that the 151B claim is somehow dismissed. Therefore, the Edsalls respectfully request that this Court either deny the motion to dismiss as to Count VII outright, or, instead reserve on this portion of the motion to dismiss until such time as the Court considers a motion for summary judgment, if filed, later in the case.

> **5. The Edsalls Have Stated a Claim For Tortious Interference with Prospective Business Advantage Upon Which Relief May Be Granted; To the Extent that Edsalls' Claim is Lacking, the Edsalls' Seek Leave to Amend Count VIII to Include an Allegation of Malice.**

In Count VIII, the Edsalls assert a claim for tortious interference with prospective business advantage against the individual defendants. In essence, the Edsalls claim that the individual defendants "knowingly induced AC to breach its contract with Plaintiff Edsall by various means, including, without limitation, by failing and/or refusing to offer Plaintiff Edsall a tenure-track position." (Complaint, ¶53).

The Defendants argue, on a limited basis, that Defendant Plough cannot be liable to the Edsalls because Defendant Plough, as the President of Assumption College and the one with the authority to hire tenure-track professors, cannot be considered separate and apart from Assumption College for purposes of the within claim.  (See Defendants' Memorandum, at pp. 6-7). Defendants also argue that Mr. Gower did not have a final say in the decisionmaking process, so he could not be found liable. (*Id.* at p. 7).  Since that information was not included in the Complaint, it should not be considered by the Court at this stage in the proceedings[3].  The Defendants do not refer to Defendant McClymer in their argument as to Count VIII (other than to write that the count should be dismissed as to all defendants), and, therefore, as to him, this motion should be denied.

As noted in *Galdauckas v. Interstate Hotels Corp. No. 16*, 901 F.Supp. 454, 466 (D.Mass. 1995), such a claim includes four elements:

---

[3] On page 7 of the Defendants' Memorandum, Defendants alleged that Mr. Gower was responsible for making recommendations to the President, but he did not have a final say in the decision. None of that information appears in the Edsalls' Complaint either, and, in keeping with the notion that this Court must accept the allegations of the Complaint as true, it should not be considered on a motion to dimiss.

1) an established business relationship or a situation where an indivdual was about to enter into into a contractual arrangement with a prospective employer;

2) the defendants knew about such relationship or arrangement;

3) the defendants intentionally and improperly interfered with said relationship or arrangement; and

4) Plaintiff suffered a loss of advantage due to the defendants' wrongful conduct.

See *Yovino v. Fish*, 27 Mass.App.Ct. 442, 445, 539 N.E.2d 548 (1989); *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 816, 551 N.E.2d 20 (1990). In the case at bar, Dr. Edsall had an existing contract and a contemplated contract of economic benefit with Assumption College. The individual defendants were aware of that relationship, and they interfered with Dr. Edsall's efforts to obtain a professorship at Assumption because of their discrimination against him on the basis of race and/or gender.

An employer cannot be found liable for tortious interference with its own contract. *Appley v. Locke*, 396 Mass. 540, 543 (1986). In *Evans v. Certified Engineering & Testing Corp.*, 834 F.Supp. 498 (D.Mass. 1993), therefore, the signatories to a shareholders agreement could not be found liable for tortious interference with the shareholders

15

agreement. The Court conducted a different analysis, however, in determining whether the individual defendants were liable to the former employee based upon an oral contract under which the employer would repurchase certain stock. *Id.* at 498. The Court noted that the individual defendants would not be liable if the interference was privileged as a part of their employment responsibilities, and ultimately held that there were genuine issues of material fact regarding whether two employees' actions were "improper in motive or means or motivated by malice". *Id.* In the case at bar, the Edsalls have alleged that the individual defendants have engaged in improper, discriminatory conduct against Dr. Edsall which interfered with his prospective employment contract with Assumption College. Such conduct is violative of public policy and would not be a privileged part of this employment responsibility.

> Where the corporation and the individual defendant are indistinguishable, including, without limitation, where the individual is the corporation's sole stockholder, it would exalt form over substance to hold that the corporation could not be sued successfully in contract, but that the corporation's alter ego could be sued successfully in tort.

*Harrison v. NetCentric Corp.,* 433 Mass. 465, 744 N.E.2d 622 (2001). In the case at bar, Assumption College is not a small corporation with a single shareholder. All three of the individual defendants are easily distinguished from the College itself. None of the individual defendants would qualify as an

16

"alter ego" of Assumption College. They are, to use Defendant's language, third parties to Dr. Edsalls' efforts to enter in to a contractual relationship with Assumption College for position he sought.

As a result, contrary to the findings of the Illinois case upon which Defendants heavily rely, the Edsalls may assert a claim for intentional interference with prospective business relations against the Defendants. In *Legoff v. Trustee of Boston University,* 23 F.Supp. 2d. 120, 130 (D. Mass 1998), the Court held that a former coach set forth a *prima facie* case of tortious interference claim against two of her supervisors, the Athletic Director and the Assistant Athletic Director, where they allegedly discriminated against her on the basis of gender, among other things. Defendants' motion to dismiss Count VIII should therefore be denied. To the extent that this Court is inclined to grant the motion to dismiss as to Count VIII, the Edsalls respectfully request leave to amend their Complaint to include an allegation of malice.

### 6. Giselle Edsall Has Properly Stated a Claim for Loss of Consortium Against Defendants.

In Count IX, Giselle Edsall asserts a loss of consortium claim against the Defendants arising out of the Defendants' wrongful conduct towards her husband, Dr. Edsall. Defendants argue that no such claim may be brought on an alleged civil

17

rights violation. (Defendants' Memorandum, at p. 8). The Defendants do not seek to dismiss the loss of consortium claim to the extent that it is based upon other counts of the Complaint. To the extent that the Edsalls have alleged a loss of consortium claim grounded in the claims other than civil rights violations, this Court should deny Defendants' motion to dismiss. In other words, her loss of consortium claim survives to the extent that it is based upon any of the underlying torts alleged here. *Tauriac v. Polaroid Corp.,* 716 F.Supp. 672, 673 (D.Mass. 1989).

The Defendants cite to *Tauriac* for the proposition that the Supreme Judicial Court would follow the federal example and reject loss of consortium claims based upon violations of Massachusetts civil rights statutes. (Defendants' Memorandum, at p. 8). "Since *Tauriac*, however, the Appeals Court of Massachusetts has hinted that the state law might diverge from the federal on this question." *Silva v. Hit or Miss*, 73 F.Supp.2d 39, 43 (D.Mass. 1999)(loss of consortium claim based upon state law discrimination claim survived motion to dismiss); *Zhang v. Massachusetts Inst. Of Tech.*, 46 Mass.App.Ct. 597, 708 N.E.2d 128 (1999), (gender discrimination claim could give rise to loss of consortium claim), *Lorenc v. Be Free, Inc.*, 136 F.Supp.2d 1, 4 (D.Mass. 2001)(motion to dismiss as to loss of consortium claim denied where based upon underlying state law

18

discrimination claims). The Edsalls therefore respectfully request that this Court deny Defendants' motion to dismiss as to Count IX.

**WHEREFORE,** for the above reasons, Plaintiffs Thomas Edsall and Giselle Edsall respectfully request that this Court DENY Defendants' motion to dismiss. In the alternative, to the extent that this Court is inclined to grant the motion to dismiss as to Count VIII, the Edsalls respectfully request that this Court GRANT the Edsalls leave to amend their Complaint to allege malice.

```
                                        The Plaintiffs
                                        DR. THOMAS M. EDSALL,
                                        GRISEL EDSALL,
                                        By Their Attorneys,


                                        /S/Paul J. Klehm
                                        James B. Krasnoo BBO# 279300
                                        Paul J. Klehm BBO# 561605
                                        23 Main Street
                                        Terrace Level
                                        Andover, MA 01810
                                        (978) 475-9955
```

**CERTIFICATE OF SERVICE**

    I, Paul J. Klehm, hereby certify that I forwarded copies of the within document to Douglas F. Seaver, counsel to Defendants, Hinckley, Allen & Snyder LLP, 28 State Street, Boston, MA 02109-1775, by first class mail, postage pre-paid on July 16, 2004.

                                      /S/Paul J. Klehm
                                      Paul J. Klehm